UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Pamela Langlois

    v.                                     Civil No. 19-cv-192-JD
                                           Opinion No. 2019 DNH 089

Insys Therapeutics, Inc.

O R D E R

Pamela Langlois brings suit against Insys Therapeutics, Inc., alleging claims that are based on Insys's efforts to induce Physician Assistant Christopher Clough to prescribe Subsys, an opioid medication manufactured by Insys, to Langlois. Insys moves to dismiss Langlois's claims on the grounds that they are untimely and that she fails to state claims for fraud and civil conspiracy.[1] Langlois objects.

Standard of Review

A motion under Federal Rule of Civil Procedure 12(b)(6) seeks to dismiss on the ground that the plaintiff fails "to

---

[1] The court recently addressed the same issues, similar facts, and the same claims in Perry v. Insys Therapeutics, Inc., Civil No. 18-cv-1190-JD, 2019 DNH 084, (D.N.H. May 14, 2019). Langlois and Perry are represented by the same counsel, and Insys is the only defendant in both cases. Because the legal issues are the same in both cases, the court will rely on the legal standards used in Perry for purposes of this order.

    In Perry, the court explained to Insys that citations to sources and authorities should be in the body of its memorandum rather than in footnotes. The same instruction applies here.

state a claim on which relief can be granted." A motion to dismiss may be based on a defense that the claims are barred by the statute of limitations. Abdallah v. Bain Capital LLC, 752 F.3d 114, 119 (1st Cir. 2014). To decide the motion, the court accepts as true all of the properly pleaded facts and draws reasonable inferences in favor of the nonmoving party. Lemelson v. Bloomberg L.P., 903 F.3d 19, 23 (1st Cir. 2018).

## Background

Pamela Langlois was a patient at the PainCare clinic in Somersworth, New Hampshire, in 2013 for treatment of osteoarthritic pain. She was treated by Physician Assistant Clough, who used various opioid medications including Oxycodone. Langlois did not have cancer during any time while being treated at PainCare.

### A. Langlois's Treatment with Subsys

In July of 2013, Clough began prescribing Subsys for Langlois. Clough did not tell Langlois that he had changed her medication. Clough prescribed Subsys at a dose of 400 mcg.

Langlois received the first shipment of Subsys by FedEx from a company called Lindencare in New York. When Clough's office called Langlois to tell her that someone over eighteen

years old would have to sign for the shipment, she asked what the medication was because she had not been told she had a new prescription. In his notes, Clough wrote that he was replacing Langlois's prescription for Roxicodone with Subsys, but in fact he continued to prescribe Roxicodone to Langlois, along with Subsys.

By November of 2013, Clough had increased the dose of Subsys to 1200 mcg, and then in December he increased the dose to 1600 mcg every four to six hours. Clough continued to prescribe Roxicodone along with Subsys.

Langlois became dependent on Subsys and experienced symptoms from taking the medication. On several occasions, she lost consciousness. At other times, she became comatose, and she was often in a zombie-like state. Her husband thought that she had stopped breathing on one occasion.

Clough cut the Subsys prescription in half, to 800 mcg, in July of 2014. By October of 2014, Clough stopped prescribing Subsys to Langlois, but he did not discuss the change with her. Langlois called the office in October to ask about her prescription, and Clough's assistant wrote a note in the file asking if Clough had discussed the change of prescription with Langlois. Clough's response was "hold Subsys." Langlois

experienced serious symptoms of withdrawal after her prescription was cut in half and then discontinued.

To explain the change, Clough told Langlois that PainCare was no longer prescribing Subsys because drug addicts were using it improperly. Langlois now believes that the real reason was because Clough's license was under investigation in the fall of 2014. The Board of Medicine suspended Clough's license in 2015 and revoked his license in 2016.

### B. Subsys and Insys Therapeutics

Subsys is a sublingual opioid spray, classified as a Schedule II substance, that is manufactured by Insys. Subsys is more potent than morphine or heroin. The FDA approved Subsys in January of 2012 to manage breakthrough cancer pain in adults when the patient had become tolerant of other opioid medications. The FDA-approved dosage was 100 mcg.

A TIRF REMS form was completed for Langlois's Subsys prescription. TIRF REMS stands for Transmucosal Immediate Release Fentanyl Risk Evaluation and Mitigation Strategy, which is an FDA program, and enrollment is required to prescribe, dispense, or distribute TIRF medications. Langlois did not sign the form, and instead her name was typed where her signature should have been.

4

The New Hampshire Attorney General's Office began an investigation of Clough's dealings with Insys. In the course of that investigation, the Attorney General's office discovered that New Hampshire residents received more than 800 prescriptions for Subsys, consisting of 100,000 units, in 2013 and 2014 and that Clough wrote 84% of the prescriptions. The investigation uncovered a scheme through which Insys paid Clough to prescribe Subsys

Insys paid Clough $44,000.00 to promote Subsys at speaking engagements, which were shams. Instead of business events, the engagements were social gatherings usually attended by Clough's friends and family that were held at high end restaurants.[2] Clough also participated in Insys's Speakers Bureau and became a critical part of that program. He was also paid to speak at those events. Clough was one of the highest prescribers of Subsys in the country and the highest prescriber in New Hampshire.

In August of 2014, Clough received a notice of a hearing before the New Hampshire Board of Medicine that alleged he had been engaged in inappropriate prescribing practices. Clough

---

[2] Sometimes only Clough and an Insys representative attended the events.

then informed Insys that he would no longer participate in the Speakers Bureau.

The State of New Hampshire brought suit against Insys in Merrimack County Superior court, alleging that the Speakers Bureau was a scheme for Insys to pay prescribers in exchange for Subsys prescriptions.[3] Clough was arrested by federal authorities in March of 2017. He was found guilty on December 18, 2018, on one count of conspiracy to pay and receive kickbacks and six charges of receiving kickbacks. United States v. Clough, 17-cr-37-JL (D.N.H. Dec. 18, 2018).

C.  Langlois Learns of Alleged Scheme

In August of 2016, Langlois received a telephone call from a special agent with HHS-OIG.[4] The agent asked Langlois about her Subsys prescription, whether she had signed TIRF REMS paperwork, and details about her treatment with Clough. The agent did not reveal anything about Clough's scheme with Insys.

On November 26, 2018, an FBI agent came to Langlois's home to serve her with a subpoena to testify during Clough's criminal trial. Langlois states that until she was served with the

---

[3] Langlois provides no further information about that suit.

[4] Langlois does not identify further who the agent represented.

subpoena, she had no knowledge of Insys's involvement in Clough's prescription of Subsys or the scheme that Insys arranged with Clough.

Langlois filed her complaint against Insys in state court on January 22, 2019. Insys removed the case to this court. Langlois filed an amended complaint on April 5, 2019. Langlois alleges claims of fraud, Count I; negligence, Count II; violation of the New Hampshire Consumer Protection Act, Count III; and civil conspiracy, Count IV.

## Discussion

Insys moves to dismiss all four of Langlois's claims on the ground that they are untimely under RSA 508:4, I.[5] Insys also argues that Langlois fails to state a claim for fraud or for civil conspiracy. Langlois objects, arguing that her claims are timely, as provided by the discovery rule and the fraudulent concealment doctrine, and that her claims are properly pleaded.

A. Timeliness

Under RSA 508:4, I, as is pertinent for this case, "all personal actions, . . . may be brought only within 3 years of

---

[5] Insys does not address the separate limitations period that applies to claims under the New Hampshire Consumer Protection Act, RSA 358-A:3, IV-a.

7

the act or omission complained of." An exception to that time limit is also provided so that "when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission, the action shall be commenced within 3 years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of." RSA 508:4, I. For purposes of the claim under RSA 358-A, transactions are exempt from liability if they were "entered into more than 3 years prior to the time the plaintiff knew, or reasonably should have known, of the conduct alleged to be in violation of this chapter." RSA 358-A:3, IV-a.

The defendant bears the initial burden to show that the action was not brought within three years of the underlying events. Beane v. Dana S. Beane & Co., 160 N.H. 708, 712 (2010). If that burden is met, the plaintiff bears the burden of showing that the time is tolled by operation of the discovery rule or fraudulent concealment. Fuller Ford, Inc. v. Ford Motor Co., 2001 WL 920035, at *6 (D.N.H. Aug. 6, 2001).

Because Langlois filed her complaint on January 22, 2019, the three-year limitation period began on January 23, 2016. Insys contends that Langlois knew of her causes of action in

8

October of 2014 when she experienced severe withdrawal symptoms after her Subsys prescription was lowered. Langlois contends that the discovery rule applies and that she did not know of her causes of action until she was served with the subpoena in November of 2018. Alternatively, Langlois argues that the fraudulent concealment doctrine applies to toll the limitations period until she received the subpoena.

### 1. Discovery Rule

The discovery rule has two parts. "First, a plaintiff must know or reasonably should have known that [she] has been injured; and second, a plaintiff must know or reasonably should have known that [her] injury was proximately caused by the conduct of the defendant." Beane, 160 N.H. at 713. Therefore, the discovery rule will apply to toll the limitations period unless the plaintiff knew or should have known of her injury AND knew or should have discovered that the defendant caused her injury. Id. "[A] plaintiff need not be certain of this causal connection; the possibility that it existed will suffice to obviate the protections of the discovery rule." Id.; accord Lamprey v. Britton Constr., Inc., 163 N.H. 252, 257 (2012). For purposes of the discovery rule, whether the plaintiff exercised

reasonable diligence is a question of fact.  Black Bear Lodge v. Trillium Corp., 136 N.H. 635, 638 (1993).

Insys argues that the discovery rule does not save Langlois's claims because she could have discovered Insys's potential liability as soon as she experienced the withdrawal symptoms she describes.  In support, Insys states that Franz v. Purdue Pharma. Co., 2006 WL 455998 (D.N.H. Feb. 22, 2006), is "on all fours" with this case.  Insys also relies on a New Hampshire Superior Court order finding that claims against Clough and Insys were untimely.

Langlois's claims are aimed at Insys's actions to induce Clough to overprescribe Subsys for an unapproved purpose.  For that reason, her claims accrued when she knew or should have known that Insys's alleged bribery and kickback scheme caused her injuries.  As the court explained in Perry, because of the difference in the claims, neither Franz nor Kyle v. Clough, 219-2018-CV-00163 (Strafford County Sup. Ct. Sept. 20, 2018), is persuasive here.  See Perry, 2019 DNH 084, at *10-*12.

Insys has not shown any reason to find that Langlois knew or should have known of an injury caused by Insys in October of 2014, when she suffered withdrawal symptoms.  While she might have been put on notice or have been given a reason to make further inquiry when the agent from HHS-OIG called her to

10

discuss her Subsys prescription in August of 2016, that happened less than three years before she filed her complaint. Therefore, Insys has not shown that her claims were untimely filed.

### 2. Fraudulent Concealment

As was also explained in Perry, the nature of Insys's scheme might also support application of the fraudulent concealment rule. Perry, 2019 DNH 084, at *13-*14. It is unnecessary, however, because the discovery rule applies to toll the limitations period.

### B. Fraud Claim

Insys moves to dismiss Langlois's fraud claim on the ground that she does not allege that Insys made false statements to her or that false statements made to third parties were repeated to her. In the absence of those allegations, Insys contends, Langlois has not alleged that she reasonably relied on statements made by Insys. In her objection, Langlois contends that there is no requirement that Insys make a statement to her and that statements "to another" are sufficient to support a claim of fraud.

Under New Hampshire law, to state a fraud claim, a plaintiff must allege facts that show "the defendant made a representation with knowledge of its falsity or with conscious indifference to its truth with the intention to cause another to rely upon it." Snierson v. Scruton, 145 N.H. 73, 77 (2000). The plaintiff must also establish that her reliance was justified. Id. Further, a plaintiff cannot show fraud based on a fraudulent statement made to a third party "when that statement was relied upon solely by others, even if that reliance forms a link in a chain of events that ends up causing harm to the plaintiff." Moore v. Mortg. Elec. Registration Sys., Inc., 848 F. Supp. 2d, 107, 131 (D.N.H. 2012).

Fraud may also consist of the intentional concealment of a material fact. Leavitt v. Stanley, 132 N.H. 727, 729 (1990) (citing Batchelder v. N. Fire Lites, Inc., 630 F. Supp. 1115, 1118 (D.N.H. 1986) (citing LeClerc v. Ins. Co., 93 N.H. 234, 237 (1944)). For "a failure to disclose to be actionable fraud, there must be a duty arising from the relation of the parties to so disclose." Batchelder, 630 F. Supp. at 1118.

Langlois does not allege that Insys made any fraudulent statements to her or failed to disclose any material fact that it had a duty to disclose. She argues that she alleges fraud because Insys made false representations to others, including

insurance companies. She does not explain, however, how she reasonably relied on those representations. Her quote from a case in a Kansas court does not show that she has alleged fraud by omission. Because of the specificity required by [Federal Rule of Civil Procedure 9(b)](), Langlois's allegations are insufficient to allege a claim of fraud against Insys.

III. Civil Conspiracy

Insys moves to dismiss Langlois's civil conspiracy claim on the ground that New Hampshire does not recognize a separate claim for civil conspiracy. Insys contends that because the civil conspiracy claim is based on the fraud claim, which is deficient, the civil conspiracy claim also fails to state a cognizable claim. Langlois agrees with Insys's statement of the law but argues that she adequately pleaded fraud.

Under New Hampshire law, "'[t]o state a claim for civil conspiracy the plaintiff must allege: (1) two or more persons (including corporations); (2) an object to be accomplished (i.e., an unlawful object . . .); (3) an agreement on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof.'" [6] [Laura v. Gr.]()

---

[6] Although the "unlawful object" or "unlawful means" elements of civil conspiracy may be satisfied by an underlying tort, the New Hampshire Supreme Court has not held that the

13

Lakes Higher Ed. Guaranty Corp., 2018 DNH 023, 2018 WL 671174, at *8 (D.N.H. Feb. 1, 2018) (quoting Jay Edwards, Inc. v. Baker, 130 N.H. 41, 47 (1987)); see also Isaacs v. Trs. Of Dartmouth Coll., 2018 WL 734182, at *11 (D.N.H. Feb. 5, 2018). An action for civil conspiracy is aimed at the damage that it caused. In re Appeal of Armaganian, 147 N.H. 158, 162 (2001).

As in Perry, Langlois alleges that Clough and Insys conspired through the bribery and kickback scheme to prescribe Subsys to her for a nonapproved use and in dosages that exceeded the highest approved amounts. The object to be accomplished by the conspiracy between Clough and Insys was for Insys to make money from the sale of Subsys that it would not have made if Subsys had been prescribed only for appropriate treatment and in approved dosages. The means of accomplishing that object was the alleged bribery and kickback scheme used by Insys to sell Subsys, which was arguably unlawful.[7] The alleged result of the

---

underlying tort must also be a viable claim against the named defendant. "[Civil conspiracy] is a legal doctrine under which liability for a tort may be imposed on people who did not actually commit a tort themselves but who shared a common plan for its commission with the actual perpetrators." 15A C.J.S., Conspiracy § 1 (March 2019 Update) (earlier edition quoted by the New Hampshire Supreme Court in Jay Edwards, 130 N.H. at 47, for the elements of a claim for civil conspiracy). In any case, Langlois alleges torts other than fraud.

[7] See, e.g., United States v. Clough, 17-cr-37-JL (D.N.H. Dec. 18, 2018) (jury verdict against Clough on charges of conspiracy to pay and receive kickbacks in violation of 18

14

conspiracy between Insys and Clough was that Langlois suffered from the effects of over prescription of an addictive drug that was not medically necessary or even approved for her treatment.

Therefore, the civil conspiracy claim is not necessarily dependent on the fraud claim. Langlois alleges facts that state a claim for civil conspiracy.

## Conclusion

For the foregoing reasons, Insys's motion to dismiss (document no. 13) is granted as to the fraud claim, Count I, and is otherwise denied.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

May 16, 2019

cc: Michael P. Rainboth, Esq.
    Michael D. Ramsdell, Esq.
    Adam P. Schwartz, Esq.
    David J. Walz, Esq.

---

U.S.C. § 371 and receiving kickbacks in violation of 42 U.S.C. § 1320a-7b(b) from a "pharmaceutical company"); United States v. Gurry, 16-cr-10343-ADB (D. Mass. May 2, 2019) (jury verdict against Insys executives).